Rufus G. **MAYFIELD, et al., Plaintiffs,**

v.

**Sharon Pratt KELLY, et al., Defendants.**

**Charles BRIDGES, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Viola J. KEYES, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. Nos. 91–2590, 91–2620 and 91–2817.**

United States District Court, District of Columbia.

Sept. 23, 1992.

Joel P. Bennett, Winfred R. Mundle, Robert L. Bell, Washington, D.C., for plaintiffs.

Cary D. Pollak, Office of Corp. Counsel, D.C., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Plaintiffs in each of these similar lawsuits are employees who were terminated in the fall of 1991 from District of Columbia government employment by Mayor Sharon Pratt Kelly ("the Mayor"). Their

terminations were part of an effort to reduce the bloated District of Columbia budget in order to prevent the city from sinking further into financial crisis. The Court has consolidated these cases for purposes of resolving their Fifth Amendment due process and equal protection claims. These claims are before the Court on defendants' motions to dismiss[1] and plaintiffs' cross-motions for summary judgment. This Court has jurisdiction under 28 U.S.C. § 1331.

## I. Factual Background

In November of 1990, the Commission on Budget and Financial Priorities of the District of Columbia issued a report, known as the "Rivlin Report," which made a number of recommendations on how to remedy the District of Columbia's fiscal crisis. As one of its chief conclusions, the Report called for a reduction in government staffing, especially at middle management levels.

Upon the Mayor's inauguration in January of 1991, she declared a fiscal emergency in the city and announced that the D.C. government would have to undergo a reduction in force ("RIF"). Rather than proceeding under existing RIF guidelines, however, the Mayor and the D.C. Council initiated emergency legislation to override existing provisions for workforce reductions. The resulting legislation, the District of Columbia Government Comprehensive Merit Personnel Act of 1978 Emergency Amendment Act of 1991, D.C. Act 9–65, 38 D.C.Reg. 4935 ("the Emergency Act"), was approved by the Mayor on July 24, 1991. Congress authorized the enactment of the Emergency Act by passing the District of Columbia Emergency Deficit Reduction Act of 1991, Pub.Law No. 102–106, 105 Stat. 539 (Aug. 17, 1991).

The employees affected by this legislation, many of whom are plaintiffs in these lawsuits, were non-union employees at salary grade level DS–11 and above. Approximately one hundred such employees were terminated. Although a much larger number of terminations had been projected, the RIF enacted was less drastic than anticipated. In addition, some employees who received RIF notices took advantage of early retirement incentives and others were retained or rehired, further reducing the actual number of terminations from the previously projected numbers.

The Emergency Act provided for the abolition of "excess positions." Each agency head was responsible for identifying these positions from among those jobs above the DS–11 level that were not part of existing collective bargaining agreements. Employees terminated under the Emergency Act were not eligible for reassignment and competition under preexisting RIF provisions. The Emergency Act provided instead for one round of competition for retention in a limited range of positions, excluding positions in collective bargaining units.

The plaintiffs in these lawsuits are among the approximately one hundred employees who lost their jobs in the RIF. The *Mayfield* plaintiffs filed a complaint on October 11, 1991, which included a request for a preliminary injunction enjoining the RIF (No. 91–2590). The *Bridges* plaintiffs filed a complaint, similar to *Mayfield* in the relief requested, on October 15, 1991 (No. 91–2620). The *Keyes* plaintiffs filed their complaint on November 1, 1991, also seeking an injunction (No. 91–2817).

Judge (now Chief Judge) Penn, to whom these cases were originally assigned, heard arguments on the preliminary injunction request in *Mayfield*. He denied the preliminary injunction for the reasons stated in his opinion, *Mayfield v. Kelly*, Mem.Order, No. 91–2590 (Nov. 8, 1991). Judge Penn found that the plaintiffs had demonstrated neither irreparable injury nor a strong likelihood of success on the merits of their Fifth Amendment claims. Judge Penn expressly limited his conclusions, however, for purposes of the preliminary injunction; he did not decide the merits of the dispute. *See* Mem.Order, *supra*, at 22.

---

**1.** The *Mayfield* defendants, 91–2590, filed a motion to dismiss or, in the alternative, for summary judgment.

These cases are now before the Court on defendants' motions to dismiss and plaintiffs' cross-motions for summary judgment. The Fifth Amendment issues have been fully briefed and the remaining factual disputes are immaterial to the due process and equal protection claims.

## II. Due Process

■ Plaintiffs in each of these cases assert that the RIF violated the Fifth Amendment by denying plaintiffs' right to property without due process. In order to establish that defendants have violated their right to due process, plaintiffs must establish first, that they have a property right to their D.C. government employment; and second, that the RIF denied them this right without due process of law.

The Supreme Court has held that where civil servants are guaranteed employment by statute, subject only to the limited exception of for-cause dismissal, such a statute creates a property right protected by the due process clause. In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985), the Court held that Loudermill, who could only be dismissed for cause under Ohio law, was entitled to due process protection from unfair dismissal. *Id.* at 538–39, 105 S.Ct. at 1491. Specifically, due process required that Loudermill be granted a pre-termination hearing to allow him to challenge the grounds for his dismissal. *Id.* at 542–43, 105 S.Ct. at 1493. Like the employee in *Loudermill*, the plaintiffs here had a statutory right to continued employment unless removed for cause. D.C.Code § 1–617.1(b).[2]

■ The plaintiffs in these cases are not entitled to the same protection afforded in *Loudermill*, however, because employees terminated as part of a RIF do not enjoy the same due process protection as employees terminated for cause. This principle follows from the *Loudermill* decision itself. In evaluating whether the employer's actions violated due process, the *Loudermill* court balanced "the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens." 470 U.S. at 542–43, 105 S.Ct. at 1493.

These interests weigh differently in a RIF than they do in a removal for cause. The employee's interest in a for-cause dismissal involves more than the position at stake because of the stigma that results from a for-cause dismissal and the problems such dismissal might create for future employment opportunities. Although a RIF results in significant hardship for the terminated employees, it does not pose these additional problems. The governmental interests in removing employees during a RIF are also quite different from the usual for-cause dismissal. A RIF involves a large number of employees—in these cases, over one hundred—for whom it is impossible to have pre-termination hearings.

■ Pre-termination hearings are for these reasons not required in RIF terminations. Neither the RIF regulations that were supplanted by the Emergency Act nor the Emergency Act regulations provide for such hearings. To the extent that courts have discussed this issue, they have concluded that hearings are not necessary during a RIF. *See American Fed'n of Gov't Employees v. Office of Personnel Management*, 821 F.2d 761, 767 (D.C.Cir.1987); *West v. Grand County*, 967 F.2d 362 (10th Cir.1992); *Praprotnik v. City of St. Louis*, 798 F.2d 1168 (8th Cir.1986), *rev'd on other grounds*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). A RIF clearly does not raise the same due process concerns that are raised by for-cause dismissals.

This conclusion is not dispositive, however, of the plaintiffs' due process claims, which are based on a different ground than

---

**2.** "A permanent employee in the Career or Educational Service who is not serving a probationary period ... may be ... removed from the Service only for cause and only in accordance with the provisions of this subchapter and subchapter VI of this chapter." D.C.Code § 1–617.-

1(b). Career service includes "all persons appointed to positions in the District government, except persons appointed to positions in the Excepted, Executive or Educational Service." D.C.Code § 1–608.1(a).

that which existed in the previously cited cases. The plaintiffs here claim that the RIF that resulted in their terminations violated due process not because of a failure to provide a pre-termination hearing, but because the RIF violated RIF provisions already in force. *See* D.C.Code §§ 1–625.1 to 1–625.4. The question this claim presents is whether the Emergency Act violated plaintiffs' due process rights by overriding these existing RIF provisions.

■ Plaintiffs assert that their due process rights were violated because the Emergency Act did not afford them the same protections they would have enjoyed under the regular RIF provisions. In particular, plaintiffs challenge the limitation of their rights to competition for reemployment to positions outside of existing collective bargaining units, *see* D.C.Code § 1–625.4, Temporary Section 2405(d), 38 D.C.Reg. 4935.

The Emergency Act's restriction of plaintiffs' reemployment opportunities does not constitute a violation of the due process clause of the Fifth Amendment. Although the Emergency Act limited existing RIF protections in certain respects, it preserved more than enough protections to satisfy due process. The Emergency Act provided for one round of retention competition for non-collective bargaining positions; for thirty days written notice; for review of termination by the Temporary Panel of the Office of Employee Appeals; for severance pay, where warranted; and for judicial review of the Temporary Panel's decision on an employee's appeal. *Id.* § 2405(d)–(h). With the exception of the restriction on competing for collective bargaining positions, these protections are virtually the same as those provided in the supplanted RIF provisions. The Emergency Act's restriction on competition rights and variation of the appeals process do not differ

enough from the former RIF provisions to constitute a violation of due process. The Court therefore finds that the Emergency Act's protections are adequate to withstand plaintiffs' due process challenge. Accordingly, the due process claims asserted in plaintiffs' complaints must be dismissed.

### III.  Equal Protection

■ Plaintiffs in *Mayfield* and *Bridges* assert that the Emergency Act violated their Fifth Amendment right to equal protection because it arbitrarily targeted a particular group of employees—those employees at grade DS–11 and above who were not part of existing collective bargaining agreements—for dismissal. Because this group is not a suspect class, the legislation must be rationally related to a legitimate end in order to withstand plaintiffs' equal protection challenge. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 442, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985).

■ The Emergency Act survives a rational basis test. The class of employees affected was determined according to facts that are directly relevant to employment decisions. The designation of employees at grade DS–11 and above for consideration for dismissal is a reasonable consequence of findings in the Rivlin Report and by the D.C. Council[3] that the government was overstaffed particularly at middle management levels. The designation of employees not part of existing collective bargaining units is similarly rational, given that collective bargaining agreements conferred specific employment rights on these employees that may have posed greater difficulties in the conduct of the RIF than were presented by a RIF limited to employees outside the bargaining agreements.[4]

---

**3.** *See* D.C. Council Res. 9–92, § 2(a) (July 2, 1991) ("There exists an immediate crisis regarding the budget of the District of Columbia ... that, if left unchecked, will severely undermine the District's bond rating and restrict the District's ability to provide essential services and programs to District residents.").

**4.** Defendants in *Mayfield* assert that dismissing employees in collective bargaining units would have violated the collective bargaining agreements. Motion of Defendants to Dismiss the

The plaintiffs rely on *City of Cleburne, supra,* in which the Court found that the City's zoning ordinance was not rationally related to the City's stated goals. 473 U.S. at 450, 105 S.Ct. at 3259. In that case, the zoning ordinance rested on an "irrational prejudice against the mentally retarded" rather than on sound zoning concerns. *Id.* No such irrational prejudice is present in the plaintiffs' case. To the contrary, the reasons for selecting the particular group targeted by the Emergency Act are employment-related, and thus of direct concern to the implementation of a RIF.

Plaintiffs contend that their dismissal penalized them for working their way into middle management positions and therefore punished them for hard work and competence.[5] Plaintiffs' arguments about the Emergency Act's lack of wisdom are not wholly without merit. There is no evidence that the dismissal of this group was the sole method of alleviating the fiscal crisis. Yet the Court does not need to determine whether or not the RIF was carried out in the best interests of the city or whether its effectiveness was limited by compromises responsive to the political process. The Court need not find that the legislation is intelligent or advisable for purposes of an equal protection challenge. *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979) ("[W]e will not overturn such [an unwise or improvident] statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational."). *See also Gregory v. Ashcroft,* ―― U.S. ――, ―― – ――, 111 S.Ct. 2395, 2405–07, 115 L.Ed.2d 410 (1991) (legislation does not violate equal protection merely because its classifications are imperfect). The Court need only find that the legislation was rationally related to the legitimate goal of reducing the D.C. government budget in order to uphold the legislation. Because the legislation meets this test, the Court rejects plaintiffs' equal protection challenge. Accordingly, the equal protection claims in the *Mayfield* and *Bridges* complaints must be dismissed.

Complaint or in the Alternative, for Summary Judgment, No. 91–2590, at 25. This motion was incorporated by reference in *Bridges,* Defendants' Motion to Dismiss Complaint, No. 91–2620.

**5.** *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss the Complaint Or In the Alternative For Summary Judgment And Plaintiffs' Cross–Motion For Summary Judgment, No. 91–2590, at 12.