Nancy **JURADO SANCHEZ,**
**et al., Plaintiffs,**

**v.**

**Miguel PEREIRA, et al., Defendants.**

**Civil No. 05–1293 (GAG).**

United States District Court,
D. Puerto Rico.

Oct. 25, 2007.

Jorge M. Izquierdo–San–Miguel, Izquierdo–San Miguel Law Office, Roberto Marquez–Sanchez, Roberto Marquez Law Office, San Juan, PR, for Plaintiffs.

Francisco A. Ojeda–Diez, P.R. Department of Justice, Lavinia Aparicio–Lopez, Maria Judith Surillo, Commonwealth Department of Justice, San Juan, PR, Jo–Ann Estades–Boyer, Prado, Nunez & Associates, PSC, Gurabo, PR, for Defendants.

### *OPINION AND ORDER*

GUSTAVO A. GELPI, District Judge.

Plaintiffs, the Estate of Eddie Colon, Luz Abby Colon, Eddie Colon Sanchez and Nancy Jurado Sanchez (hereinafter collectively "plaintiffs"), filed this suit as Eddie Colon's ("Colon") next of kin because of his death while he was incarcerated at a Puerto Rico state prison. Plaintiffs brought this action pursuant to 42 U.S.C. § 1983 alleging constitutional rights violations, as well as state law claims of negligence under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141. Defendants Miguel Pereira, Sixto Marrero, Luis Rivera Torres and Luis Garcia Garcia (hereinafter collectively "defendants") timely moved for summary judgment solely on the Section 1983 cause of action. Defendants argue that: (1) there was no substantial risk of serious harm or deliberate indifference on behalf of the prison officials; and (2) they are entitled to qualified immunity. After a thorough review of all pleadings and pertinent law, the court **DENIES** defendants' motion for summary judgment (Docket No. 89).

### I. Standard of Review

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When deciding a motion for summary judgment, the court must view the record in the light most favorable to the party opposing summary judgment, including all reasonable inferences in the nonmoving party's favor. *See id.* "If, after canvassing the material presented, the district court finds *some* genuine factual issue remains in the case, whose resolution one way or the other *could* affect its outcome, the court must deny the motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). "The movant's burden is particularly rigorous when the disputed issue involves questions of motive or intent, since in these cases jury judgments about credibility are typically thought to be of special importance." *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 895 (1st Cir.1988).

### II. Relevant Material Facts and Procedural Background

The court derives the following factual summary primarily from the parties' statements of material facts. *See* Docket Nos. 89 and 98. Consistent with the summary

judgment standard, the court states the facts in the light most favorable to the plaintiffs. *See Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006). Plaintiffs either admit, deny, or qualify each of defendants' proposed uncontested facts. As permitted by Local Rule 56(c), plaintiffs also incorporate a separate section of additional facts into their statement. D.P.R. Local Rule 56(c). Defendants did not submit a reply to plaintiffs' additional facts. *See* D.P.R. Local Rule 56(d). Consequently, the court deems admitted all properly supported facts contained in the plaintiffs' opposing statement. *See* D.P.R. Local Rule 56(e).

On the day of the incident, March 16, 2004, Colon was an inmate at Bayamon 308, an intake center considered minimum security with some limitations. *See* Docket No. 51 at 14 and Docket No. 98 at 13. The inmate capacity at Bayamon 308 is 144. *See* Docket No. 89 at 12. Although the capacity was not exceeded, some cells despite being originally built for one inmate, housed two inmates. *See id.* Bayamon 308 was built prior to the leading case *Morales Feliciano v. Barcelo,* 497 F.Supp. 14 (D.P.R.1979), and does not comply with the 55 square footage minimum requirement for each cell. *See* Docket No. 98 at 12. Therefore, the individual cell gates are left continuously open, like an open dormitory, in order to comply with the *Morales Feliciano* requirement. *See id.*

The Administration of Corrections ("Corrections") houses three categories of inmates at the intake center: (1) inmates awaiting pre-trial; (2) inmates convicted and sentenced waiting to be taken to their institution; and (3) "impure" inmates. *See* Docket No. 89 at 35–38. There are two types of "impure" inmates: (1) those that have been out on a program, failed to comply with its conditions, and are arrest-ed and confined for a new offense; and (2) those who have failed to comply with program conditions and are awaiting revocation, reclassification or distribution. *See id.* Colon was considered an "impure" inmate, and at the time of the incident only "impure" inmates were admitted to Bayamon 308. *See* Docket No. 89 at 38–39, 57.

At the time of the incident (and currently), Corrections did not take gang affiliation into consideration when segregating prisoners at Bayamon 308. *See* Docket No. 89 at 41–42, 48–49. Colon did not identify himself as a gang member, nor inform Bayamon 308 that he feared for his life. *See* Docket No. 89 at 45, 47, 50, 55–56. If an inmate requests to be separated, it is done. *See* Docket No. 89 at 51, 55. Also, if someone at the intake center has knowledge that the inmate is in danger, the inmate is segregated. *See* Docket No. 89 at 52, 55. If the inmate has committed a notorious and well-disclosed crime, he is segregated if not doing so would put him in danger of being harmed. *See* Docket No. 89 at 53, 55. Colon did not meet any of the above-mentioned segregation criteria since the intake center did not receive any tips that he was in harm's way and did not consider him a notorious inmate. *See* Docket No. 89 at 54, 59–60.

Corrections has established minimum requirements that must be met in order to ensure that a secure environment is maintained within its correctional facilities. *See* Docket No. 98 at 62. These regulations mandate that prison officials conduct random searches of cells in order to make sure that inmates do not manufacture or keep weapons within the institution. *See* Docket No. 98 at 63. On June 6, 2000, Bayamon 308's past administrator issued a mandate requiring weekly search of the cells. *See* Docket No. 98 at 18, 64. Plaintiffs allege that this mandate was in effect at the time of Colon's death. *See id.* De-

fendants assert that, on March 16, 2004, prison officials were to conduct the random searches at least once a month[1]. *See* Docket No. 89 at 18–19. Defendant Pereira testified that according to the regulations, prison officials must conduct daily searches of at least 10 cells. *See* Docket No. 98 at 65. Prison officials randomly searched Bayamon 308 once in December 2003, once in January 2004, and twice in February 2004. *See* Docket No. 89 at 20. Prison officials did not search Bayamon 308 in March 2004 until after Colon's death. *See id.* During the search conducted on February 26, 2004 officials found 62 shanks or deadly weapons at Bayamon 308's C–II building where Colon resided. *See* Docket No. 98 at 68. Defendant Pereira testified that a finding of over 10 shanks in a population of 100 inmates is problematic, and therefore, the finding of 62 shanks was a concern that needed to be investigated. *See* Docket No. 98 at 69–70. Defendants aver that they still had the remainder of the month of March to be in compliance with the monthly searches regulation. *See id.* However, plaintiffs argue that defendants were in violation of their weekly search regulation. *See* Docket No. 98 at 10.

Bayamon 308 is supposed to follow the MGT[2] Staffing Analysis ("MGT Analysis"), which states the minimum amount of staff, the optimum amount, the fixed positions and the movable positions, pursuant to *Morales Feliciano*. *See* Docket No. 89 at 1–2, 6, 14. The fixed positions, such as control units, cannot be changed under any circumstances, but the movable positions may be modified depending on the necessity due to the type of inmate at the facility. *See* Docket No. 89 at 7–8, 13. Plaintiffs allege that defendants did not comply with the MGT Analysis, while defendants aver that they did comply. *See* Docket No. 89 at 1, 6, 14 and Docket No. 98 at 1, 6.

Defendants allege that on March 16, 2004 there was adequate staffing at Bayamon 308. *See* Docket No. 89 at 9. Plaintiffs disagree due to the discovery of 62 shanks during the February 26, 2004 search at the same building where Colon was stabbed to death by fellow inmates using shanks. *See* Docket No. 98 at 9, 68. Defendants assert that at the time of the attack the inmates were outside the building for recreation purposes. *See* Docket No. 89 at 10. Plaintiffs clarify that only approximately 30 inmates of the possible 144 had gone outside. *See* Docket No. 98 at 10. Defendants assert that there was one recreational officer with the inmates in addition to the two officers that were in the building. *See* Docket No. 89 at 11. Plaintiffs clarify that the two officers who were inside the control units were actually located outside the building. *See* Docket No. 98 at 11, 14. Plaintiffs aver that one officer supervising 30 inmates during recreation does not comply with the *Morales Feliciano* stipulations. *See* Docket No. 98 at 14.

The gates at Bayamon 308 have a drop lock that falls into place once the gate reaches the end in order to lock it either open or shut. *See* Docket No. 89 at 22–24. While the gate is moving there is no drop bar in place, and it can be tampered with force or objects in order to keep it open. *See* Docket No. 89 at 26, 30–31 and Docket No. 98 at 27, 29. Once the gate is completely open or shut and the lock mechanism is in place, the defendants allege the

---

1. Defendants aver that defendant Pereira issued a new regulating mandating weekly inspections in December 2004. *See id.*

2. MGT is a private company that visits the institution in order to determine its roster of service-the number of guards to be deployed at that location. *See* Docket No. 89 at 3–5, 14.

gate cannot be forced. *See* Docket No. 89 at 29. Plaintiffs aver the gates can be forced, and the inmates forced them during the March 16, 2004 incident. *See* Docket No. 98 at 29. Defendants aver that the gates were working properly on March 16, 2004, but plaintiffs disagree. *See* Docket No. 89 at 21, 28, 34 and Docket No. 98 at 21, 28, 34. Defendants assert that on the day of the incident the inmates had placed sticks in between the gates, and were thus able to force them open. *See* Docket No. 89 at 27. Plaintiffs allege the inmates were able to open the gates solely with their strength. *See* Docket No. 98 at 27. Once the inmates controlled the gates, other inmates went downstairs with large weapons and killed Colon. *See id.* at 74–75.

## III. Legal Analysis

### A. Section 1983 Generally

 Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983, which states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declar-

atory decree was violated or declaratory relief was unavailable.

Section 1983 does not create substantive rights. Rather, the statute provides a procedural mechanism for enforcing federal constitutional or statutory rights. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Therefore, a Section 1983 plaintiff must identify the particular federal right that he seeks to enforce via judicial proceedings. In order to prevail in a Section 1983 claim, a plaintiff must demonstrate that the defendant (1) acted under color of state law and (2) deprived him of the identified federal right. *Cepero–Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir.2005) (quoting *Romero–Barcelo v. Hernandez–Agosto*, 75 F.3d 23, 32 (1st Cir.1996)). A defendant incurs Section 1983 liability only if he was personally involved in the deprivation of rights asserted by a plaintiff; a defendant may be found liable only on the basis of his own acts or omissions. *Id.; Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir.1989); *Rosado De Velez v. Zayas*, 328 F.Supp.2d 202, 209 (D.P.R.2004).

### B. Failure to Protect

 Prison officials have a constitutional duty to protect inmates from violence at the hands of other inmates.[3] *See Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order for plaintiffs to succeed in their failure to protect claim they must show that prison officials violated their duty. *See Calderon–Ortiz v. Laboy–Alvarado*, 300 F.3d 60, 64 (1st Cir.2002) (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). Two requirements must be met: (1) the depri-

---

**3.** Sentenced prisoners are protected under the Eighth Amendment's cruel and unusual punishment restraints, and pre-trial detainees under the Fourteenth Amendment's Due Process Clause. *Rivera–Quinones v. Rivera–Gon-* *zalez*, 397 F.Supp.2d 334, 343 (D.P.R.2005). "However, the standard to be applied is the same as that used in Eighth Amendment cases." *Id.*

vation alleged is "objectively, sufficiently serious," and (2) the conditions of incarceration pose a substantial risk of serious harm. *See id.* "The culpable state of mind is that of 'deliberate indifference' to an inmate's health or safety." *Id.* The deliberate indifference determination is a subjective one: "if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

In the matter under review, the defendants do not dispute they were all acting under color of state law while performing their duties pertaining to Colon's incarceration at Bayamon 308. In regards to the failure to protect violation requirements, defendants do not challenge that Colon's deprivation is objectively and sufficiently serious since he died as a result of the March 16, 2004 incident. However, defendants dispute that the conditions at Bayamon 308 on the date of the incident posed a substantial risk of serious harm to the inmates.

Specifically, the defendants aver that there were sufficient guards as stipulated in the *Morales Feliciano* guidelines. However, plaintiffs have introduced the written statement made by defendant Vargas dated March 6, 2004[4] to contradict that assertion. *See* Docket No. 98 Exhibit 3. Defendant Vargas states, "[w]e the custody officers don't have the security nor equipment to perform our job." *Id.* Additionally, defendants argue that the gates were working properly, but defendant Vargas himself states that "the entrance doors to the upper and lower controls do not lock" and "the control to lock the cells in the housing area does not work well. Any-

one can open them by pulling them." *Id.* A genuine issue of fact remains as to whether there were enough guards at Bayamon 308 on March 16, 2004 in order to comply with both the *Morales Feliciano* stipulations and the MGT Analysis. Whether the gates were functioning correctly and whether Corrections at Bayamon 308 complied with their safety regulations is for the trier of fact to decide. Also, there is a dispute as to whether Defendants were mandated to perform weekly or monthly searches of the inmate cells, which could have prevented the accumulation of the weapons used in the incident where Colon lost his life. Plaintiffs have provided sufficient evidence to raise the inference of the culpable state of mind required for defendants to be liable. Inmates at Bayamon 308 were allowed to move freely due to the square footage of the cells, defendants were aware of the large amount of shanks found in the C–II building as testified by defendant Pereira, and defendants were also aware of the gate and door conditions. Defendants purported non-compliance with these safety requirements could support the inference of deliberate indifference. As such, it is not proper for the court to decide the matter on this motion.

## C. Qualified Immunity

■■■■■■ Prison officials and officers are entitled to qualified immunity from damages in a Section 1983 claim "if they acted with the objective good faith belief that they were not violating the plaintiff's statutory or constitutional rights, as measured by the state of the law when the deprivation occurred." *See Maldonado Santiago v. Velazquez Garcia,* 821 F.2d 822, 830 (1st Cir.1987). The three-part inquiry requires the court to consider: (1) whether the

---

**4.** The Court notes that defendant Vargas made this statement in regards to the March 16, 2004 incident, and the date March 6, 2004 is a typographical error.

plaintiff's allegations, if true, establish a constitutional violation; (2) if so, whether the right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated that right. *Whalen v. Mass. Trial Court,* 397 F.3d 19, 23 (1st Cir.2005). Since qualified immunity is an affirmative defense, the defendant has the burden to present evidence that he acted objectively reasonable under the circumstances. *See id.* at 345. Since there are several factual issues that should be properly submitted to a jury, the court cannot at this stage decide whether defendants are eligible to receive qualified immunity.

## IV. Conclusion

At this stage of the proceedings, mindful of our duty to make all reasonable inferences in the plaintiffs' favor, the court finds that triable issues remain as to defendants' alleged liability. Accordingly, the court **DENIES** defendants' motion for summary judgment (Docket No. 89).

**SO ORDERED.**