**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2790
No. 15-2873
No. 15-3012

_____

JILL E. MANCINI,
Appellant in No. 15-2873

v.

NORTHAMPTON COUNTY; JOHN BROWN, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY;
VICTOR E. SCOMILLIO, IN HIS INDIVIDUAL AND
OFFICAL CAPACITY

Northampton County,
Appellant in Nos. 15-2790 and 15-3012
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-14-cv-00963)
District Judge:  Honorable Juan R. Sánchez
_____

Argued: March 14, 2016

Before:  FUENTES, CHAGARES, and RESTREPO,
*Circuit Judges*

(Filed: September 9, 2016)
_____

Samuel E. Cohen, Esq.
Patrick J. Reilly, Esq.          [ARGUED]
Gross McGinley
33 South 7th Street
P.O. Box 4060
Allentown, PA 18105
       *Counsel for Appellee/Cross-Appellant*

David L. Schwalm, Esq.     [ARGUED]
Jill L. Walsh, Esq.
Thomas Thomas & Hafer
305 N. Front Street
P.O. Box 999
Harrisburg, PA 17108

Jill L. Walsh, Esq.
Thomas, Thomas & Hafer
1550 Pond Road
Suite 210
Allentown, PA 18104
       *Counsel for Appellant/Cross-Appellee*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge.*

Jill Mancini, a former assistant county solicitor in Northampton County, Pennsylvania, brought this 42 U.S.C. § 1983 action against Northampton County, County Executive John Brown, and County Solicitor Victor Scomillio, in connection with their termination of her employment. Mancini, a Democrat, alleged that she was a protected career service employee and that the newly elected Republican administration wrongfully dismissed her in violation of the Fourteenth Amendment Due Process Clause and the First Amendment. A jury found that Northampton County, but not Brown or Scomillio, violated Mancini's procedural due process rights and awarded her $94,232 in damages. The jury found in favor of all Defendants on Mancini's First Amendment claims. We conclude that the able trial judge appropriately handled the numerous issues raised by the parties, and we will affirm.

This case requires us to consider whether there is an exception to the ordinary requirements of procedural due process when a government employee with a protected property interest in her job is dismissed as part of a departmental reorganization that results in the elimination of her position. We have not previously considered this so-called "reorganization exception." We hold that a reorganization exception to constitutional procedural due process cannot apply as a matter of law where, as here, there is a genuine factual dispute about whether the reorganization was pretext for an unlawful termination.

**I.**

3

### A. Factual Background

#### 1. *Mancini's Employment in Northampton County*

Mancini began her employment with Northampton County in 2001 as a part-time assistant district attorney. In December 2006, the Northampton County Council approved a request from Karl Longenbach, then County Solicitor, to create one full-time assistant county solicitor position. Prior to that time, the Northampton County assistant solicitors were all part-time employees. The County Council eliminated a vacant part-time assistant county solicitor position when it created the full-time position. In February 2007, Mancini was hired into the newly created full-time position, which she believed was part of the Northampton career service. In 2012, the Northampton County Council created a second full-time assistant county solicitor position, which was filled in early 2013.

In November 2013, Defendant John Brown was elected County Executive of Northampton County. He tapped Defendant Victor Scomillio to serve under him as County Solicitor. Before taking office, Brown and Scomillio decided that they would make changes to the staffing of the Solicitor's Office. According to Mancini, Scomillio told her on December 23, 2013, that her position would be eliminated on January 7, 2014.

On January 7, 2014, Brown formally requested that the County Council eliminate the two full-time assistant county solicitor positions and replace them with two additional part-time positions. Mancini filed a grievance that same day

4

challenging her forthcoming dismissal on numerous grounds, including that her discharge violated Northampton's Home Rule Charter, its Career Service Regulations, and Northampton County Employee Policy No. 3.525, "Reduction in Force and Recall" (the "Layoff Policy").

The County Council acted on Brown's request on January 23, 2014, eliminating the two full-time positions and creating the requested part-time positions. Mancini's last day of work was Friday, January 24, 2014, the last business day before the reorganization took effect. She was suspended with pay until her February 17, 2014 termination. Mancini was not offered either of the newly created assistant county solicitor jobs, and she was not permitted to displace an existing part-time assistant county solicitor.

Mancini did not receive formal written notice of her termination until a letter dated January 27, 2014, advised her that on January 23 her position had been eliminated. The elimination of her position was the only ground Northampton provided for Mancini's dismissal. In the notice, the County took the position that the "full time assistant county solicitor positions were career exempt positions." J.A. 3416.

Northampton County held an informal hearing on Mancini's grievance on February 19, 2014, two days after it stopped paying her, and nearly a month after she was relieved of her duties. She was not permitted to have counsel present at the hearing. The County denied Mancini's grievance. Mancini appealed to the Northampton Personnel Appeals Board (the "Board"), which held two hearings on her grievance—one in May 2014 and one in June 2014. Months passed with no decision. Finally, in response to an inquiry

5

from her lawyer, the Board informed Mancini by letter dated November 19, 2014, that the Board was "hopelessly deadlocked." J.A. 3425. No further action was taken on Mancini's appeal, and the Board never reached or communicated a final decision to Mancini.

### 2. *The Northampton County Career Service*

Under the Northampton Home Rule Charter, members of the career service can only be dismissed for "just cause" and they have the right to appeal to the Northampton Personnel Appeals Board for a pretermination just cause determination. *See id.* at 3326, 2688. The distinction between career service and exempt service has important consequences for Northampton employees, and for our analysis of Mancini's due process claim. While Mancini's status as a career service employee is not at issue on appeal, it was contested at trial.

The Northampton Home Rule Charter[1] states that all County employees "shall be members of the career service," except for nine discrete categories of exempt employees. *Id.*

---

[1] Under the Pennsylvania Constitution, counties "have the right and power to frame and adopt home rule charters." Pa. Const. art. IX, § 2. A county "which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." *Id.*; *see* 53 Pa. Cons. Stat. § 2961.

at 3325. We agree with the parties that Mancini's position did not fall within the meaning of any one of the nine enumerated exemptions.[2] The Resolution that created Mancini's full-time assistant county solicitor position did not state whether the position was exempt or career service. However, former County Solicitor Longenbach testified that he intended the full-time assistant county solicitor position to be part of the career service, and that he believed the position the County Council approved, and that Mancini occupied, was, in fact, a career service position. Linda Markwith, a personnel analyst in the Northampton County Human Resources Department responsible for recruitment and hiring when Mancini was hired as a solicitor, testified that Mancini's position was designated as career service from the outset and the designation never changed. An email from Markwith to Longenbach confirmed that Mancini's position was "included in the Career Service category." *Id*. at 3388. Meanwhile, defendant Scomillio testified that, based on his research in 2013, he believed Mancini was not a member of

---

[2] The nine exemptions from the career service are: (1) all elected officials; (2) the heads of agencies immediately under the direction and supervision of the County Executive; (3) one confidential or clerical employee for each of the above officials, except for members of the County Council; (4) the Clerk of Council and the staff of the County Council; (5) the members of authorities, boards, and commissions; (6) permanent, part-time professional employees; (7) provisional, probationary, and temporary employees; (8) officers and employees required to be included in a state merit or civil service system; and (9) officers and employees whose inclusion in the career service would be prohibited by the law of Pennsylvania. J.A. 3325.

7

the career service and that she could be laid off as part of a reorganization. But, he conceded, if it were determined that she was a career service employee, the County could not terminate her without just cause.

## B. Procedural History

Mancini filed a Complaint in the District Court against Northampton County, Brown, and Scomillio (collectively, the "Defendants") under 42 U.S.C. § 1983. Relevant to these appeals, she alleged the Defendants violated her Fourteenth Amendment right to procedural due process when they terminated her without a pretermination hearing or just cause determination, and they violated her First Amendment rights when they terminated her based on her political affiliation.[3] The Defendants responded in their motion to dismiss that Mancini failed to state a claim on either theory because she was an exempt, or at-will, employee and her position was eliminated pursuant to a legitimate, cost-driven reorganization of the Solicitor's Office. Mancini countered that the "reorganization" was pretext for an unlawful termination and that, as a Northampton County career service employee, she was entitled to pretermination due process, which she did not receive. The District Court denied the Defendants' motion to dismiss.

The Defendants moved for summary judgment on all claims. They argued that Brown and Scomillio were entitled to qualified immunity because their actions did not violate

---

[3] Mancini's equal protection claims were dismissed before the case was submitted to the jury and are not a subject of these appeals.

8

any clearly established rights. As to Mancini's due process claims, they also argued that Mancini had failed to establish that she held a protected property interest in her position or that she was entitled to due process when her position was eliminated by reorganization. The District Court granted Brown and Scomillio qualified immunity for all claims brought against them in their individual capacities. As to the remaining claims, the court reserved judgment on the Defendants' due process arguments and on all claims against Northampton.

Mancini tried her claims against Northampton County, and Brown and Scomillio in their official capacities. After a five-day trial, the jury returned a split verdict. It found that Northampton violated Mancini's procedural due process rights, but that Brown and Scomillio did not. Significantly, the jury also found that Mancini's full-time assistant county solicitor position was a career service position. The jury found no violation of Mancini's First Amendment rights. The jury awarded Mancini $94,232 in damages and the District Court entered judgment consistent with the verdict.

Northampton moved for judgment as a matter of law or a new trial under Rule 50 of the Federal Rules of Civil Procedure. It asserted four bases for relief: (1) a miscarriage of justice would result if the verdict were allowed to stand because it was contrary to law, the evidence was insufficient to support the verdict, and the verdict was against the weight of the evidence; (2) the elimination of Mancini's position fell within a so-called "reorganization exception" to constitutional procedural due process; (3) Northampton County law and policy do not require procedural due process where a position is eliminated as part of a reorganization; and (4) Pennsylvania

9

assistant county solicitors are employed at-will as a matter of law and are not entitled to pretermination procedural due process. Northampton advances these same four arguments on appeal.

The District Court denied Northampton's Rule 50 post-trial motion. Over Northampton's objections, the District Court granted Mancini $186,018.60 in attorney's fees and costs as the prevailing party under 42 U.S.C. § 1988. These timely appeals followed. In Appeal No. 2790, Northampton appeals the denial in part of its motion for summary judgment and the denial of its post-trial motion for judgment as a matter of law or a new trial. In Appeal No. 15-3012, Northampton appeals the District Court's award of Mancini's attorney's fees and costs.[4]

## II.

The District Court had jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. We have jurisdiction over the final decisions of a district court. 28 U.S.C. § 1291.

---

[4] Mancini cross-appealed seeking a new trial on her First Amendment claims (Appeal No. 15-2873), but at oral argument before this Court she withdrew her appeal, agreeing with the Court that a second trial would be redundant. We therefore do not reach the issues she presented in her cross-appeal. In addition, even if Mancini had not withdrawn her cross-appeal, we have reviewed her arguments regarding her First Amendment claims and find those arguments unconvincing in view of the jury's factual determinations.

Our review of orders entered on motions for summary judgment is plenary. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). "'[W]e may affirm the District Court on any grounds supported by the record,' even if the court did not rely on those grounds." *Id.* (quoting *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000)). "In considering an order entered on a motion for summary judgment, 'we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995)). If the "non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Id.*

Our review of orders concerning post-trial motions for judgment as a matter of law is also plenary and we apply the same standard as the district court. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). The motion may be granted "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Id.* We "may not weigh the evidence, determine the credibility of witnesses, or substitute [our] version of the facts for the jury's version." *Id.* "Because the jury returned a verdict in favor of the plaintiff, we must examine the record in a light most favorable to the plaintiff, giving her the benefit of all reasonable inferences, even though contrary inferences might reasonably be drawn." *In re Lemington Home for the*

11

*Aged*, 777 F.3d 620, 626 (3d Cir. 2015) (quoting *Dudley v. S. Jersey Metal, Inc.,* 555 F.2d 96, 101 (3d Cir. 1977)).

We review the denial of a motion for a new trial for abuse of discretion, unless it was based on an application of law, in which case our review is plenary. *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009). An abuse of discretion occurs if a "court's decision rests upon a clearly erroneous finding of fact, errant conclusion of law or an improper application of law to fact" or "when no reasonable person would adopt the district court's view." *Blunt*, 767 F.3d at 265 (quotation marks omitted).

We similarly review the reasonableness of attorney's fees awarded under 42 U.S.C. § 1988 for abuse of discretion. *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990).

## III.

### A.  Northampton County's Appeal of the Due Process Judgment

Northampton appeals the denial of its post-trial motion for judgment as a matter of law or a new trial, and the partial denial of its motion for summary judgment. The County reasserts on appeal the same four arguments it made in its post-trial motion.

#### 1.  *Sufficiency of the Evidence*

The District Court held that sufficient evidence supported the jury's verdict that Northampton violated Mancini's due process rights. We agree.

12

In response to special interrogatories, the jury found by a preponderance of the evidence that "Jill Mancini's position as a full time assistant county solicitor in Northampton County was a career service position" and that Northampton County "violated Jill Mancini's due process rights by not providing her with a meaningful pre-termination opportunity to respond to the elimination of her position." J.A. 1634.

Northampton did not challenge the sufficiency of the evidence supporting the jury's finding that Mancini held a career service position. *See* Br. of Northampton at 51-55. Northampton has therefore waived any such argument. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief"). We accept in this appeal, as we must, that Mancini was in fact a career service employee. *See Lightning Lube, Inc.*, 4 F.3d at 1166. Nevertheless, given the significance of Mancini's status as a career service employee to our decision, we review the evidence from which the jury could have concluded that Mancini was a career service employee.

The plain text of the Northampton Home Rule Charter states that all non-exempt County employees are members of the career service. Full-time professional employees are not listed among the exemptions, and none of the exemptions could fairly include a full-time permanent assistant county solicitor such as Mancini. Karl Longenbach, the County Solicitor who headed the Solicitor's Office when Mancini was hired and who presented the concept of a full-time assistant county solicitor to the County Council, testified that Mancini occupied a career service position. Linda Markwith,

13

the Northampton Human Resources representative who handled Mancini's hiring, further testified that the Northampton Human Resources information system designated Mancini as a member of the career service during the entire time she held the position. Defendant Scomillio testified that even though he thought Mancini was an at-will employee, he and Brown decided to eliminate her position though a reorganization of the Solicitor's Office, rather than terminating her like the other at-will employees they dismissed. Based on these facts, had Northampton challenged this aspect of the jury's verdict, we would have concluded that the evidence was sufficient to support the finding that Mancini was a member of the Northampton County career service.

The evidence was also sufficient to establish that Northampton did not provide Mancini the meaningful process she was due. The Due Process Clause of the Fourteenth Amendment prohibits a State from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. For a discharged government employee to succeed on a violation of procedural due process claim, the employee must first prove that she possessed a constitutionally protected property right in her continued employment. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 177 (3d Cir. 2007). A "unilateral expectation of continued employment" does not amount to a constitutionally protected property interest in one's job. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). Where, however, an employee can only be fired for "just cause," the employee develops a cognizable property interest in her continued employment, and the government may not fire her without providing procedural due process. *Dee v. Borough of Dunmore*, 549 F.3d 225, 230-32 (3d Cir. 2008).

14

The Northampton Home Rule Charter provides that no member of the career service shall be "dismissed . . . except for just cause." *See* J.A. 3326. We have already established that Mancini was a career service employee. Because career service employees in Northampton can only be terminated for just cause, we conclude that Mancini had a protected property interest in her job, and she was entitled to notice and an opportunity to be heard on the cause for her termination prior to dismissal.

Fundamentally, procedural due process requires notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, 348 (1976). The hearing must be "at a meaningful time and in a meaningful manner." *Id.* at 333. Except in emergency situations not present here, procedural due process requires that when the government seeks to discharge an employee who possess a protected property interest in her job, "it must afford notice and opportunity for hearing appropriate to the nature of the case *before* the termination becomes effective." *Dee,* 549 F.3d at 232 (emphasis added).

Mancini did not receive adequate due process. Even now, Northampton maintains that, in light of the reorganization, it did not need just cause to terminate Mancini and that it would have been idle to provide her with due process. Northampton is incorrect that no process was due. At a minimum, Mancini's protected property interest in her continued employment entitled her to "notice of the charges against [her], an explanation of the [Defendants'] evidence, and an opportunity to present [her] side of the story." *Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011)

15

(quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). The process she received was deficient on all fronts.

Mancini was notified that the full-time assistant county solicitor position was being changed to a part-time position, but the Defendants did not inform her of their charges against her or their reasons for selecting her for dismissal.[5] Without knowing the Defendants' rationale for selecting her for layoff, Mancini was not able to present her side of the story. Furthermore, the Defendants did not hold a hearing on Mancini's termination until after she was fired, despite the fact that she had promptly and properly availed herself of the Northampton grievance procedure several weeks before her termination. We hold that this evidence was sufficient to support the jury's verdict that Northampton did not provide Mancini a meaningful pre-termination opportunity to respond to her planned dismissal. The finding was not contrary to law, and the District Court did not abuse its discretion in denying Northampton a new trial on Mancini's due process claims.

## 2. *A "Reorganization Exception" to Procedural Due Process?*

Northampton asks us to excuse its conduct by adopting and applying an exception to the ordinary requirements of constitutional procedural due process. Northampton argues that "[a]lthough a property right and procedural due process

---

[5] Evidence supporting a finding that the purportedly neutral, cost-driven reorganization was in fact pretext for targeting Mancini is discussed in the next section.

typically go hand-in-hand triggering a requirement for some kind of hearing before discharge, [there is] a limited reorganization exception to due process that eliminates the need for a hearing where a reorganization or other cost-cutting measure results in the dismissal of an employee." Br. of Northampton at 37 (alterations in original) (quoting *Whalen v. Mass. Trial Ct.*, 397 F.3d 19, 24 (1st Cir. 2005)) (quotation marks omitted). Northampton contends it was not required to provide Mancini with any procedural due process before, or after, it terminated her, because once the reorganization of the Solicitor's Office occurred, Mancini's position no longer existed. Any challenge to the injustice of Mancini's dismissal would have been "futile," according to Northampton, because as a factual matter there was no longer room for her in the County government. *Id.* at 39 (quoting *Rodriguez-Sanchez v. Municipality of Santa Isabel*, 658 F.3d 125, 130 (1st Cir. 2011)).

We have not previously considered the existence of this so-called "reorganization exception" to procedural due process, and we decline to apply any exception to Northampton's conduct in this case. Because the jury could have reasonably concluded that the reorganization of the Solicitor's Office was pretext for unlawfully terminating Mancini, we do not reach the question of whether there are exceptions to the requirements of procedural due process where the government engages in a legitimate person-neutral reorganization.

Although the jury was not directed to make a specific finding on pretext, the jury found that Northampton violated Mancini's due process rights, and we agree with the District Court that Mancini presented sufficient evidence of pretext to

support that finding. Mancini presented evidence from which a jury could reasonably conclude that the Defendants' purported concern for cost-savings did not actually animate the reorganization. There was ample evidence that the Defendants decided to eliminate the two full-time assistant county solicitor positions, and replace them with part-time positions, based not on identity-neutral, cost-driven reasons, but based on their knowledge of Mancini and the people who would come to occupy the part-time positions.[6]

Evidence of pretext included the following. Scomillio and Brown decided to reorganize the Solicitor's Office shortly after Brown was elected County Executive in November 2013, even before he took office. Brown testified that when he asked Scomillio to consider a reorganization, Brown did not know what the budget of the Solicitor's Office was and he did not have any personal knowledge of whether the office was running efficiently. Without any investigation, without asking Human Resources to conduct a desk audit to determine the volume of work, and without looking at solicitors offices in comparable counties, Scomillio recommended, based on his knowledge of who was on the staff of the Solicitor's Office, that they shift the work of the

---

[6] Northampton is incorrect in its view that the jury found that the reorganization of the Solicitor's Office was legitimate. The jury found that Mancini's political affiliation was not a substantial or motivating factor in the elimination of her position. However, this does not rule out a multitude of other improper bases for her termination, including the possibility that Northampton orchestrated a sham reorganization to target Mancini and circumvent the process she was due as a member of the career service.

full-time solicitors to part-time solicitors. Scomillio had experience with the individuals he planned to hire as part-time solicitors and he believed they would work more efficiently than the existing staff.

When they decided to conduct the reorganization, Brown and Scomillio had concerns about the competency of the Solicitor's Office in general, and about Mancini in particular. Brown testified that the "reputation of the [Solicitor's Office] was not strong." J.A. at 2496. Scomillio testified that his prior experience with Mancini, when she worked in the district attorney's office, "wasn't good" and he "didn't come off with a good experience about her abilities." *Id.* 2657. Scomillio had no interest in keeping Mancini on staff after she reacted negatively to his suggestion of a reorganization and informed him that she could only be fired for cause. Scomillio also testified that Daniel Spengler, his predecessor,[7] advised him to retain the position of full-time assistant solicitor but was "equivocal at best regarding his feeling about Attorney Mancini and her . . . work ability." J.A. at 2650. Instead of taking Spengler's advice to keep the full-time positions but not Mancini, the Defendants eliminated the full-time positions and told Mancini that her job no longer existed. They redistributed Mancini's work to part-time solicitors—both old and new—without giving her the option to remain employed with the County.

Evidence that Northampton failed to comply with its Layoff Policy casts further doubt on its claim that it engaged

---

[7] Longenbach resigned as County Solicitor at the end of 2012. Daniel Spengler was appointed to serve the final year of Longenbach's term.

19

in a bona fide reorganization plan. Under the Layoff Policy, career service employees are entitled to retention priority over part-time employees, to notice of existing vacancies and the right to displace less senior employees in the same or lower job title, and to be placed on a recall list to fill subsequent vacancies in the same or lower job title. The Layoff Policy thus favors regular and full-time career service employees over part-time employees, and requires the County to give notice of vacancies to career service employees who are subject to layoff. Despite these enumerated rights, Northampton laid-off Mancini, a regular, full-time career service employee, and distributed her work to part-time employees of the same title without allowing her to displace a less senior assistant county solicitor or to assume one of the newly created positions.

Viewing the evidence in the light most favorable to Mancini and drawing all reasonable inferences in her favor, the evidence was more than sufficient for a jury to determine that the Defendants targeted Mancini based on her personal performance, and that the reorganization was pretext for firing her. Northampton's argument that "pre-termination hearings are not required by due process where a *bona fide* government reorganization plan bases dismissals on factors *unrelated* to personal performance" is therefore misplaced. Br. of Northampton at 39 (quoting *Rodriguez-Sanchez*, 658 F.3d at 130) (emphasis added). The cases on which Northampton relies do not apply where a reorganization was pretextual. *See id.* at 35-40.[8]

---

[8] In *Whalen v. Massachusetts Trial Court*, the First Circuit held that a "limited 'reorganization exception'" did *not* apply to a court clerk because his job performance and

other individual qualifications were decisive factors in the decision of the Springfield District Court to terminate him during a deficit-driven layoff. 397 F.3d at 22-26. The First Circuit held that the Government violated Whalen's due process rights because it targeted him, not his position, in the layoff. *Id.* at 25-26. Similarly, Mancini was one of only two people "reorganized" out of a job in the Solicitor's Office and there was evidence that the Defendants targeted her based on her individual qualifications and not her position.

In *Rodriguez-Sanchez v. Municipality of Santa Isabel*, the First Circuit did permit the government to lay off employees during a reorganization without the process they were otherwise due, but the neutral reduction in force in that case bears little resemblance to the evidence Mancini presented. *See* 658 F.3d at 132. *Rodriguez-Sanchez* involved the claims of ninety-eight terminated employees of the Municipality of Santa Isabel, Puerto Rico. *See id.* at 129. An independent accounting firm determined that Santa Isabel's $7 million deficit was largely due to the size of the city's workforce. *Id.* at 127, 130. There was no question that the system-wide layoff plan alleviated the deficit problem. *Id.* at 130. Significantly, the record in *Rodriguez-Sanchez* was devoid of evidence of pretext, and the mayor had no knowledge of the identities of the individuals selected for layoff. *Id.* at 130-31. The First Circuit was thus satisfied that Santa Isabel had engaged in a bona fide reduction in force in response to a deficit crisis. *Id.* at 130-32. Unlike the system-wide, identity-neutral layoff scenario the First Circuit confronted in *Rodriguez-Sanchez*, Mancini was one of only two solicitors laid-off for purported budgetary reasons, and her identity was well known to County Executive Brown. There was no independent evaluation of the cost-savings that

21

Finally, we reject Northampton's argument that a "due process claim is not available if a layoff was made pursuant to a reorganization in fact, regardless of a possible improper motive behind the reorganization." *See* Reply Br. of Northampton at 23. We are aware of no court that has permitted the government to subvert the requirements of the Fourteenth Amendment with a sham reorganization. If the government were allowed to undertake sham reorganizations to dismiss an employee who was otherwise entitled to due process, Northampton's proposed "reorganization exception" would eviscerate a public employee's procedural due process rights altogether.

In conclusion, we will not permit the government to target an individual for dismissal and then violate that individual's procedural due process rights under the guise of a reorganization. "To hold otherwise would allow government officials to cry 'reorganization' in order to circumvent the constitutional and statutory protections guaranteed" to government employees who may only be fired for cause. *Misek v. City of Chicago*, 783 F.2d 98, 101 (7th Cir. 1986). There was sufficient evidence from which the jury could conclude that the reorganization was a pretext for targeting Mancini. Northampton was therefore not exempt from providing Mancini, a protected career service employee, with procedural due process when it selected her for dismissal.

3. *Northampton County's Grievance Procedure*

would result from the Defendants' plan, and there was evidence that the Defendants considered Mancini's individual qualifications when selecting her for layoff.

22

Northampton next argues that its own law and policy contain a reorganization exception that permitted the County to terminate Mancini without providing her procedural due process. *See* Br. of Northampton at 40-45. The District Court properly denied Northampton's request for judgment as a matter of law on this basis. The Northampton Home Rule Charter, Grievance Policy, and Layoff Policy entitled Mancini to a hearing before the Personnel Appeals Board to challenge the legitimacy of her discharge, despite the purported reorganization.

The Northampton Home Rule Charter, as discussed above, establishes the right of career service employees to remain employed, except on a finding of "just cause." The Charter makes no exception or special provision for reorganizations. Mancini, as a member of the Northampton career service, was therefore entitled to a pretermination just cause determination, regardless of any bona fide reorganization plan. *See Dee*, 549 F.3d at 232; *Elmore*, 399 F.3d at 282.

Under Northampton County Employee Policy No. 3.15, "Grievance Procedure" (the "Grievance Policy"), career service employees have the right to appeal "a suspension or discharge from employment," or to challenge "an alleged violation of the County's Home Rule Charter, Administrative Code, Career Service Regulations, County policy, or departmental procedure relating to terms and conditions of employment." J.A. 3374. The four-step escalated grievance process culminates in a formal hearing before the Northampton County Personnel Appeals Board. *Id.* at 3376-78. Following the hearing, the Board must issue to the parties a final written adjudication that contains the "findings and

23

reasons as adopted by the majority of the Board." *Id.* at 3378. Like the Home Rule Charter, the Grievance Policy contains no exceptions for employment actions taken as part of a reorganization or cost-driven layoff. Mancini, a career service employee, properly filed a grievance after receiving notice of her impending dismissal. She alleged wrongful discharge, unlawful discrimination, and violations of Northampton's Career Service Regulations and Layoff Policy. She was therefore entitled to pursue her claims through the Northampton County grievance process.

Northampton boldly asserts that its Layoff Policy "does not offer a right to due process in response to a legitimate reorganization." Br. of Northampton at 43. The Layoff Policy, however, does not provide the escape hatch Northampton seeks. It, too, entitled Mancini to due process. The Layoff Policy governs dismissals where the "County may need to institute a Reduction in Force (RIF, Layoff) due to economy, efficiency, restructuring, reorganization, or other related reasons." J.A. 3380. By its own terms, the policy applies "to all County employees." *Id.*[9] The Layoff Policy permits employees to appeal a layoff to the Personnel Appeals Board on the grounds that the "Career Service Regulations were not followed, or that the decision to select this layoff unit was arbitrary, capricious, or a violation of law." *Id.* at 3383. Mancini was therefore entitled under the

---

[9] The Layoff Policy applies to all County employees, "except where collective bargaining agreements, Pennsylvania State regulations, and/or State Civil Service regulations conflict," but none of these exceptions are implicated here. J.A. 3380.

24

policy to appeal her discharge precisely *because* the County called it a layoff. Mancini's grievance specifically referenced violations of the Career Service Regulations as well as violations of the Layoff Policy. If, as Northampton maintains, Mancini was dismissed pursuant to a layoff, under the Layoff Policy she was entitled to a hearing on her claims. We reject Northampton's selective reading of its own laws. [10] We hold instead that those laws required the County to provide Mancini with a pretermination hearing.[11]

***

In sum, we agree with the District Court that Northampton County is not entitled to a judgment that, as a matter of law, it was not required to provide Mancini with procedural due process prior to terminating her employment. We will therefore affirm the orders of the District Court

---

[10] We note the irony of Northampton's argument that the Layoff Policy deprived Mancini of rights, when in fact, as discussed above, the policy enumerates the array of rights and privileges Northampton grants to full-time career service employees in the event of a reduction in force.

[11] We also find no merit to Northampton's contention that *Ness v. Marshall*, 660 F.2d 517 (3d Cir. 1981), dictates the outcome of Mancini's Due Process claims. *Ness* concerned the First Amendment rights of solicitors for the City of York, who, under that city's administrative code, were political appointees and could be terminated at-will. *Id.* at 521-22. Contrary to Northampton's suggestion, we have never held that every town or county solicitor in Pennsylvania is employed at-will as a matter of law.

denying Northampton's motion for summary judgment and denying its post-trial motion for judgment as a matter of law or a new trial.

## B. Attorney's Fees

Over Northampton's objection, the District Court awarded Mancini $186,018.60 in attorney's fees and costs as the prevailing party under 42 U.S.C. § 1988. Northampton argues that Mancini's requested attorney's fees were not reasonable because she "prevailed only minimally, on a single claim out of 15 available claims, receiving a jury award that was 5% of the damages requested." Br. of Northampton at 55; *see id.* at 55-58; Reply Br. of Northampton at 31-32 ("Plaintiff was negligibly successful, recovering $94,232 where she had sought nearly two million dollars.").[12] The District Court reduced the fees by the amount Mancini's counsel incurred preparing for oral argument on her post-trial motion ($1,627.67), and subtracted an additional $126 to adjust for a duplicative entry on a bill. After these adjustments, the District Court awarded Mancini her requested fees, explaining that "[t]he Supreme Court . . . has expressly rejected the County's proffered 'mathematical

---

[12] Northampton does not contest the reasonableness of Mancini's lawyers' rates. *See* Br. of Northampton at 55-58. Northampton also does not contest the reasonableness of the award of costs and expenses. *See id.* These issues are therefore waived. *See Laborers' Int'l Union of N. Am., AFL-CIO*, 26 F.3d at 398.

approach.'" J.A. 37-8 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435, n.11 (1983)).

Under 42 U.S.C. § 1988, a "prevailing plaintiff" in a civil rights action should ordinarily recover her attorney's fees. *See Hensley*, 461 U.S. at 429. A plaintiff is a "prevailing party" for the purposes of an attorney's fee award if she succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) (quoting *Hensley*, 461 U.S. at 433). Where a plaintiff does not succeed on every claim, the Supreme Court has rejected a fee calculation approach that compares the total number of issues in the case with the number of issues on which the plaintiff prevailed. *See Hensley*, 461 U.S. at 435 n.11. Rather, where the plaintiff's claims involve a "common core of facts," or are based on "related legal theories," but the plaintiff obtained only partial or limited success, the district court may choose to reduce the award if a full compensatory fee would be unreasonable in consideration of the degree of success obtained. *Id.* at 435-36. How to measure the degree of success is left to the district court's discretion. *Id.* at 436-37.

The District Court in this case held that Mancini's claims all shared "a common core of facts" because "[a]ll three claims emerged from how and why Mancini was terminated from her employment." J.A. 38. Furthermore, Mancini "prevailed on a crucial issue which informed inquiries into all three claims and occupied much of the trial testimony: The jury found she was a career service employee." *Id.* The District Court therefore concluded that "although Mancini ultimately prevailed only on one claim

27

and received a portion of the relief she sought, reduction would be inappropriate because her claims are interconnected." *Id.*

The District Court did not abuse its discretion. Mancini prevailed on her due process claim against Northampton as well as a central issue in the case. There was substantial overlap in the evidence required to prove Mancini's due process, First Amendment, and equal protection claims, including the circumstances surrounding the creation of the full-time assistant solicitor positions and the decision to eliminate those positions and replace them with part-time assistant solicitors. The District Court considered the extent of Mancini's success and made a reasoned judgment that the time Mancini's attorneys spent on her unsuccessful claims did not warrant a reduced fee. Finding no abuse of discretion, we will affirm the District Court's award of attorney's fees, costs, and expenses.

## IV.

For the foregoing reasons, we will affirm the District Court's judgment and we will dismiss Mancini's cross-appeal.