# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jill E. Mancini              :
                                            :

          v.                  :    No. 1841 C.D. 2019
                                              :    Argued: December 8, 2020

County of Northampton,        :

                  Appellant    :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge[1]
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**          **FILED: January 27, 2021**

Appellant County of Northampton (County) appeals from an order of the Court of Common Pleas of Northampton County (common pleas), dated November 27, 2019. Common pleas vacated the decision of the Northampton County Personnel Appeals Board (Board) and ordered that Appellee Jill E. Mancini (Mancini) be reinstated to her former position as assistant solicitor for the County with back pay. For the reasons set forth herein, we vacate and remand.

Mancini began working for the County as a full-time assistant solicitor in February 2007. (Reproduced Record (R.R.) at 24a.) In January 2014, Mancini learned that her position had been eliminated and that her employment with the County would be terminated effective February 17, 2014. (*Id.* at 130a-31a.)

---

[1] This case was assigned to the opinion writer prior to January 4, 2021, when Judge Brobson became President Judge.

In response thereto, Mancini filed a grievance with the County, alleging, *inter alia*, that she was a career service employee,[2] who had been wrongfully discharged without just cause and discriminated against due to her political party affiliation. (*Id.* at 6a-8a.) Following an informal hearing, the County denied Mancini's grievance. (*Id.* at 14a-15a.)

Mancini appealed the County's denial to the Board.[3] (*Id.* at 10a-12a.) The Board held hearings on May 13, 2014, and June 4, 2014. (*Id.* at 17a-55a, 57a-103a.)

---

[2] The County's elected officials, officers, and employees are members of either the career service or the exempt service. (R.R. at 200a; Section 802 of the County's Home Rule Charter.) The County's exempt service employees include:

(1) all elected officials;

(2) the heads of agencies immediately under the direction and supervision of the [c]ounty [e]xecutive;

(3) one confidential or clerical employee for each of the above officials, except for members of the [c]ounty [c]ouncil;

(4) the [c]lerk of [c]ouncil and the staff of the [c]ounty [c]ouncil;

(5) the members of authorities, boards, and commissions;

(6) permanent, part-time professional employees;

(7) provisional, probationary, and temporary employees;

(8) officers and employees required to be included in a state merit or civil service system; and

(9) officers and employees whose inclusion in the career service would be prohibited by the law of Pennsylvania.

(*Id.*) All other County officers and employees are members of the career service. (*Id.*) Career service employees have certain rights relative to their employment with the County as established by the County's Career Service Regulations and Employee Policies Manual. One of those rights relates to disciplinary action and termination of employment: "Any disciplinary action, suspension, demotion, or termination of employment . . . of any employee in the [c]areer [s]ervice for disciplinary reasons or unsatisfactory job performance, shall be for just cause only . . . ." (*Id.* at 179a; Career Service Regulation No. 13.01.)

[3] The Board was established under Article X of the County's Home Rule Charter. (R.R. at 216a.) The Board's function is to hear grievance appeals by, among others, "any member
**(Footnote continued on next page…)**

2

Thereafter, by letter dated August 19, 2014, the Board's solicitor notified the parties' counsel that the Board had reached a deadlock; two members of the Board had voted in favor of the County, and two members of the Board had voted in favor of Mancini. (*Id.* at 231a.) By letter dated November 19, 2014, the Board's solicitor confirmed to Mancini's counsel that, "after an extensive review of the transcripts and exhibits, the Board is hopelessly deadlocked in its decision." (*Id.* at 233a.) In that same letter, the Board's solicitor invited Mancini's counsel to offer "suggestions on how . . . Mancini's matter should be handled." (*Id.*)

Approximately two years later, after the conclusion of a federal lawsuit that Mancini had filed against the County, the County's county executive, and the County's solicitor, Mancini filed a mandamus action against the Board with common pleas (Mandamus Action).[4] (*Id.* at 249a.) In the Mandamus Action, Mancini requested that common pleas enter an order directing the Board to: (1) perform its mandatory duty to issue a written decision and findings in connection with her grievance appeal as required by Career Service Regulation No. 15.02[5] and Employee

---

of the career service from any decision resulting in . . . transfer, demotion, suspension, dismissal, or disciplinary action." (*Id.* at 220a; Section 1005(a)(1) of the County's Home Rule Charter.) In connection therewith, the Board has the "power to sustain or dismiss [the] appeal, to modify a penalty, to award back pay, and to reinstate an employee." (R.R. at 220a; Section 1005(b) of the County's Home Rule Charter.)

[4] While we recognize that the Court of Common Pleas of Northampton County was acting in its capacity as a trial court and not an appellate court in the Mandamus Action, we will continue to refer to the Court of Common Pleas of Northampton County as "common pleas" in this opinion for ease of reference.

[5] Career Service Regulation No. 15.02 provides, in relevant part: "The findings and decision of the Board shall be in writing and shall be certified to the Department of Human Resources." (R.R. at 182a.)

3

Policy No. 3.15;[6] (2) provide copies of the written decision to Mancini and the County; (3) certify the written decision to the County's Human Resources Department; and (4) provide timely notice to Mancini and the County of their right to appeal from the written decision. (*Id.* at 249a, 251a.) On March 25, 2019, after review of the parties' briefs and the stipulated facts and record, common pleas entered an order finding in favor of Mancini and directing the Board to "render a written decision regarding [Mancini's] appeal; provide copies of its decision to [Mancini] and the County . . . ; certify its decision to the . . . County['s] Department of Human Resources; and provide timely notice to [Mancini] and to the County . . . of their respective rights of appeal from its decision and findings" (Mandamus Order). (*Id.* at 257a.)

In response to the Mandamus Order, the Board held a meeting on May 8, 2019, at which time, the Board heard argument from Mancini and the County. (*Id.* at 264a.) Thereafter, on June 17, 2019, the Board issued a written decision denying Mancini's appeal. (*Id.* at 259a-77a.) In so doing, the Board issued factual findings limited to Mancini's termination from her employment with the County, Mancini's appeal to the Board, the prior Board members' deadlock, the Mandamus Action, the change in the composition of the Board members between the time of the prior Board members' deadlock and the Mandamus Order, and the Board's May 8, 2019 meeting. (*Id.* at 261a-64a.) The Board reasoned:

> [T]he 2019 Board [m]embers reach a [five] to [zero] unanimous decision in favor of the County and denying the appeal of [Mancini]. The 2014 Board [m]embers, who heard all testimony and evidence as the fact-finder[s], were best situated to make credibility determinations

---

[6] Employee Policy No. 3.15 provides, in relevant part: "A final adjudication shall be in writing containing findings and reasons as adopted by the majority of the Board. The Solicitor of the . . . Board shall sign such final adjudication and copies shall be provided to the parties." (R.R. at 150a.)

4

and render a decision in the [a]ppeal. The record is clear that the 2014 Board [m]embers were hopelessly deadlocked. . . .

Accordingly, the 2019 Board [m]embers unanimously find that [Mancini] failed to satisfy her burden of proof in the [a]ppeal by convincing a majority of the 2014 Board [m]embers to vote in her favor. The 2019 Board [m]embers further find that the deadlocked or tie vote of the 2014 Board [m]embers constituted a denial of the [a]ppeal. Therefore, [Mancini's] appeal is denied.

(*Id.* at 264a-65a (citations omitted).)

Mancini appealed the Board's decision to common pleas. By order dated November 27, 2019, common pleas, *inter alia*, vacated the Board's decision and ordered that Mancini be reinstated to her former position as assistant solicitor for the County with "[back pay] at her previous salary, as well as fringe benefits, from the date of her termination, February 17, 2014, through October 23, 2018," the date on which she secured new full-time employment. (Common Pleas' Order and Reasons at 1.) In support thereof, common pleas issued a statement of reasons as follows:

7. . . . Mancini is asking [common pleas] to reverse and modify the Board's decision as it: (1) fails to make findings of fact based upon the record before the Board; (2) relies on inapposite and irrelevant law; and (3) violates Mancini's rights under the Pennsylvania Constitution. Mancini requests a finding that she was improperly discharged as a career service employee and should be awarded full back pay and benefits.

. . . .

9. The Board acknowledges that the question before it was Mancini's claim that she "is a career service employee who was discharged without just cause, discriminated against based upon her party affiliation, not provided with any opportunity to be heard prior to her discharge and not offered any alternative employment with the County" in violation of "the [County's] Home Rule Charter, the Career Service Regulations, and the . . . Employee Policies."

10. However, the decision does not make any findings of fact or conclusions of law regarding the stated issue. There is no reference to testimony in favor of finding Mancini to have been a career service employee. There is no reference to any testimony from which it could

5

be found that Mancini was not a career service employee. There is no reference to any evidence of record discussing the reasons for her termination. The decision makes no attempt to address the issue of whether Mancini was provided with an opportunity to be heard prior to her discharge, or whether she was offered alternative employment—objective facts that could have easily been discerned from the record. In sum, the Board completely abdicated its duty to issue a decision on the merits of Mancini's grievance, as demonstrated by the Board's refusal to even summarily discuss the merits of Mancini's grievance in its decision. The Board's adjudication cannot be considered to be supported by substantial evidence, as the Board's adjudication is not supported by any evidence.

11. As discussed in the . . . [M]andamus [A]ction, the current Board[ members'] reliance on the inaction of the prior Board [members], as support for the current Board[ members'] non-decision on the merits of the grievance, is wholly inappropriate. The Board and [the] County have repeatedly cited to zoning cases throughout this litigation to support their proposition that the "deadlock" vote by the 2014 Board [members] necessitates the conclusion that Mancini cannot prevail. However, they fail to appreciate that in the cases cited, . . . the respective boards, despite arriving at split decisions, all issued formal opinions supported by findings of fact and conclusions of law setting forth the grounds for denial. The 2014 iteration of the . . . Board did not, at any point, issue a written decision, even to the extent of formally declaring a deadlocked vote, as required by Career Service Regulation No. 15 and Employee Policy [No.] 3.15 (grievance procedure). It is impossible that the 2014 Board [members] could not come to a majority decision on a single finding of fact, not even Mancini's date of hire or date of termination. If the 2014 Board [members] had issued a written decision, even if that decision was a deadlock on the ultimate conclusions of law, this matter would not currently be before [common pleas]. The 2014 Board [members] completely failed to discharge [their] duty. The 2019 Board [members have] merely compounded the [2014] Board[ members'] inaction. The County has not provided any authority stating that the 2019 Board [members] could not have independently reviewed the record and made [their] own findings and conclusion[s] from that record. To allow the 2019 Board [members] to just reiterate the 2014 Board[ members'] lack of decision creates an absurd result where the merits of Mancini's grievance have never been reached. Mancini is disadvantaged in challenging the outcome because there is no way for her to determine which facts remain disputed or what law the Board may have

6

considered in reaching [the] purported deadlock. The County continues to assert that Mancini failed to meet her burden of proof[;] however that assertion is unknowable precisely because neither the 2014 Board [members] nor the 2019 Board [members] produced a written statement of the facts [they] found or the law [they] relied on in reaching [the] outcome. It is manifestly unfair to construe the Board's inaction against Mancini. It is just as speculative to assume that Mancini failed to meet her burden of proof as it is to speculate that Mancini may have set forth sufficient facts to support her contentions, but the Board made an error of law in its conclusion. Both interpretations are possible because there is no written decision addressing the merits of the grievance. It is abundantly clear that the Board's decision is not supported by substantial evidence and not in accordance with the law.

12. Despite the Board's decision not addressing the merits of Mancini's grievance, the County's brief nonetheless attempts to address the merits of Mancini's grievance. The County's brief incredibly cites to the record of the hearings before the Board in 2014, when there is no indication, anywhere, in the Board's written June 17, 2019 decision, that the cited facts are, in any way, the facts the Board relied on in reaching its decision. The County's brief improperly attempts to supply the missing rationale for the Board's decision, a particularly bold overstep when the County itself was intended to be a litigant of equal standing to Mancini before a supposedly impartial Board.

13. The County has selectively cited to the record to support its desired outcome—that Mancini's grievance be dismissed because she was not a career service employee. However, the record supports the conclusion of the federal court, that Mancini was a career service employee:

> The plain text of the [County's] Home Rule Charter states that all non-exempt County employees are members of the career service. *See* Home Rule Charter § 802.10. Full-time professional employees are not listed among the exemptions, and none of the exemptions could fairly include a full-time permanent assistant county solicitor such as Mancini. *Id.* Karl Longenbach, the County [s]olicitor who headed the [s]olicitor's [o]ffice when Mancini was hired and who presented the concept of a full-time assistant county solicitor to the County Council, testified that Mancini occupied a career service position. [Notes of Testimony (N.T.)] 5/13/14 at 18, 23-24, 29-30, 41; Exhibits P-2, P-3, P-4. Linda Markwith, the

7

[County h]uman [r]esources representative who handled Mancini's hiring, further testified that the [County's] [h]uman [r]esources information system designated Mancini as a member of the career service during the entire time she held the position. N.T. 6/4/14 at 198, 247, 248, 250-51.

*Mancini v. Northampton* [*Cnty.*], 836 F.3d 308, 315 (3d Cir. 2016) (internal citations [to common pleas' record] added).[7]

14. For the reasons set forth herein, we vacate the Board's decision pursuant to 42 Pa. C.S. § 706 and find that Mancini was a career service employee. As such, she could only be terminated for "just cause" and was entitled to notice and the opportunity to be heard prior to her dismissal. The County does not attempt to argue that Mancini was fired for cause or that she was afforded sufficient due process under its own policies. The "reorganization" justification did not excuse the due process requirement. In the hearings before the Board, Mancini asserted that she was terminated based upon her political affiliation. However, whether she was improperly terminated based upon political affiliation, or whether her position was eliminated for legitimate fiscal reasons, she was entitled to pre[]termination due process, which she did not receive. Mancini was terminated February 17, 2014, hearings were held before the . . . Board on May 13 and June 4, 2014, and no decision issued until June 17, 2019.

. . . .

17. Based on the foregoing, Mancini is entitled to reinstatement and [back pay] at her previous salary, as well as fringe benefits, from the date of her termination, February 17, 2014, through October 23, 2018, the date of her full-time re-employment. . . .

(*Id.* at 4-11 (footnotes omitted) (citations omitted).) The County appealed common pleas' order to this Court.

---

[7] Based upon our review of the record and common pleas' November 27, 2019 order and reasons, it appears that the County sought to strike the United States Court of Appeals for the Third Circuit's (Third Circuit) decision in *Mancini v. Northampton County*, 836 F.3d 308 (3d Cir. 2016), from the record. We would be remiss if we failed to note that the Third Circuit's decision is not evidence, but rather, is a legal opinion that, to the extent relevant, can be cited by the Board, common pleas, or any party regardless of whether it is included in the record.

On appeal,[8] the County argues that common pleas committed an error of law and/or exceeded its authority by vacating the Board's decision and ordering that Mancini be reinstated to her former position as assistant solicitor for the County because: (1) the Board's decision contains sufficient findings of fact and conclusions of law to support its denial of Mancini's grievance appeal, and, even if it does not, common pleas should have remanded the matter to the Board for the issuance of a new decision; (2) Mancini failed to establish that she was a career service employee and/or that she was discriminated against based upon her political party affiliation; (3) Mancini's former position as assistant solicitor for the County was properly eliminated and no longer exists; and (4) Mancini's claims are barred by the election of remedies doctrine.[9]

First, we will address the County's argument that the Board's decision contains sufficient findings of fact and conclusions of law to support its decision to deny Mancini's grievance appeal, and, therefore, common pleas exceeded its authority as an appellate court by vacating the Board's decision and substituting its own credibility determinations and findings of fact for those of the Board. More specifically, the County contends that, given the Board's decision to affirm the 2014 Board members' prior deadlock, the Board made all of the factual findings that it could under the circumstances—*i.e.*, the Board made those factual findings upon which a majority of its members could agree. The County further contends

---

[8] When the court of common pleas does not take any additional evidence, but decides the matter solely on the record created before the local agency, this Court's scope of review is limited to determining whether the local agency violated any constitutional rights, whether the local agency committed an error of law, or whether the local agency's factual findings are supported by substantial evidence. *Kuziak v. Borough of Danville*, 125 A.3d 470, 474 n.2 (Pa. Cmwlth. 2015) (citing *Spencer v. City of Reading Charter Bd.*, 97 A.3d 834, 839 (Pa. Cmwlth. 2014); 2 Pa. C.S. § 754(b)).

[9] We have reordered the County's arguments for the purposes of discussion/analysis.

9

that the Board could not issue factual findings relative to "whether [Mancini] was [a] career service [employee] which would allow her to keep her job except for 'just cause,' whether [Mancini] was terminated because of her political affiliation, or whether [Mancini] was entitled to protection under the lay-off policy, back pay or reinstatement," because a majority of the Board's members could not agree on the facts necessary to decide those issues. (County's Br. at 26.) The County suggests that, given that the Board's decision sets forth all of the factual findings upon which a majority of the Board could agree, common pleas exceeded its authority as an appellate court by vacating the Board's decision. Alternatively, the County contends that, even if the Board's decision was insufficient, common pleas should have remanded the matter to the Board for the issuance of a new decision. In response, Mancini contends that common pleas did not commit an error of law by vacating the Board's "non-decision" and entering judgment in favor of Mancini, because the Board failed to make a single finding of fact based upon the evidentiary record before it.

Common pleas, acting in its appellate capacity, concluded that the Board's decision was not supported by substantial evidence and then, pursuant to its purported authority under Section 706 of the Judicial Code, 42 Pa. C.S. § 706,[10] vacated the Board's decision and ordered that Mancini be reinstated to her former position as assistant solicitor for the County with back pay. Because common pleas did not take any additional evidence and considered the matter solely upon the evidentiary record created before the Board, however, we must review not what

[10] Section 706 of the Judicial Code, 42 Pa. C.S. § 706, provides: "An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it . . . , and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances."

10

common pleas did, but rather, what the Board did. In this regard, the County suggests that the Board's decision contains sufficient findings of fact and conclusions of law to support its denial of Mancini's grievance appeal. In making this argument, the County ignores one very important fact: there is no evidence of record to suggest that a majority of the 2019 Board members could not agree on a resolution of the issues presented in Mancini's grievance appeal. While the 2014 Board members may have been "hopelessly deadlocked" and, therefore, unable to issue factual findings on the underlying issues raised in Mancini's grievance appeal, there is nothing that we have found in the record or the Board's decision to suggest that the 2019 Board members were also "hopelessly deadlocked." Therefore, the 2019 Board members should have considered the evidentiary record and issued a decision containing findings of fact and reasoning to support a resolution of Mancini's grievance appeal and the underlying issues raised therein—*i.e.*, whether Mancini was a career service employee, was discharged without "just cause," was discriminated against based upon her political party affiliation, was not provided with an opportunity to be heard prior to her discharge, and/or was not offered alternative employment with the County, all in violation of the County's Home Rule Charter, Career Service Regulations, and Employee Policies. (*See* Common Pleas' Order and Reasons at 5; R.R. at 262a-63a.) By failing to do so, the Board did not properly discharge its responsibility to adjudicate Mancini's grievance appeal. As a result, given the nature of its appellate review, common pleas erred by vacating the Board's decision and substituting its own decision therefor and should have remanded the matter to the Board for the issuance of a new decision.

Accordingly, we vacate common pleas' order and remand the matter to common pleas with instructions that common pleas remand the matter to the Board

to issue a new decision and order consistent with this opinion.[11]  On remand to the Board, the Board shall have sixty days to issue its new decision and order and may consider the existing evidentiary record created at the hearings conducted on May 13, 2014, and June 4, 2014, and/or may hold a further hearing to take additional evidence.

P. KEVIN BROBSON, Judge

---

[11] Given our disposition above, we need not address the remainder of the County's arguments raised on appeal.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Jill E. Mancini            :
                                 :
        v.            :    No. 1841 C.D. 2019
                                 :
County of Northampton,   :
                Appellant   :

# O R D E R

AND NOW, this 27th day of January, 2021, the order of the Court of Common Pleas of Northampton County (common pleas) is hereby VACATED, and the above-captioned matter is REMANDED to common pleas with instructions that common pleas remand the matter to the Northampton County Personnel Appeals Board (Board) to issue a new decision and order consistent with the attached opinion. On remand to the Board, the Board shall have sixty (60) days to issue its new decision and order and may consider the existing evidentiary record created at the hearings on May 13, 2014, and June 4, 2014, and/or may hold a further hearing to take additional evidence.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge